TENNESSEE GAS TRANSMISSION COMPANY, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 42126.)

Third Department, April 29, 1969.

*Louis J. Lefkowitz,* Attorney-General (*Julius L. Sackman, Ruth Kessler Toch, Seymour Martinson* and *Lawrence J. Logan,* of counsel), for appellant.

*Brennan & Brennan* (*William R. Brennan* of counsel), for respondent.

Aulisi, J. This is an appeal from a judgment of the Court of Claims in favor of claimant, entered January 26, 1967, and from an order entered October 10, 1966, which denied a motion to dismiss the claim as untimely filed.

On December 28, 1954, the Federal Power Commission issued a certificate of public convenience and necessity authorizing claimant to extend a natural gas transmission line from its existing facilities in Hebron, Pennsylvania to a point near Greenwich, Connecticut, a distance of some 230 miles. Approximately 16 miles of the proposed line was to be located within the State of New York and a portion thereof was to be constructed within lands owned by Westchester County and the Westchester County Park Commission.

Claimant thereupon began acquiring easements for the construction of the proposed line and with regard to the lands owned by Westchester County and the Westchester County Park Commission, claimant obtained from the Transcontinental Gas Pipe Line Corporation (Transco) the assignment of a pipeline easement granted to Transco by the County and Park Commission in 1951. The consent of both bodies was obtained to the assignment as was their approval to certain boundary modifications of the 1951 line necessitated in part by Public Service Commission regulations. A deed incorporating these modifications and granting claimant a permanent easement for its gas pipeline was executed by the county and the Park Commission on June 10, 1955. The total consideration paid by claimant to Transco, the County and the Park Commission for the easement rights was $1,088,390.55.

Construction was commenced on June 20, 1955, and the pipeline was completed and operational by December, 1955.

Prior to the commencement of construction, claimant was aware that the construction of a new State highway (later to be called the Cross-Westchester Expressway) had been authorized by the Legislature in 1952 (L. 1952, ch. 436) and that a consulting engineer had been retained by the State to plan the route of the new roadway. Claimant, in fact, had obtained a copy of the engineer's so-called "preliminary preliminary" 1954 plans as well as his June, 1955 revision, both of which indicated that the lands of the county and the Park Commission and through which claimant held its easement were being considered.

In the spring of 1956, claimant was furnished a copy of the final plans for the White Plains section of the Expressway and a determination was made that certain sections of claimant's pipeline would interfere with the proposed highway and consequently would have to be relocated. Subsequently, the State

began acquiring property for the highway construction, including lands of the county and the Park Commission in and through which claimant held its easement. Claimant insisted that the cost of relocation be paid by the State, and during the negotiations that ensued, the counsel to the Department of Public Works wrote to the Attorney-General and requested a formal opinion " as to whether or not the relocation costs of said pipeline is a reimbursable item to the Tennessee Gas Transmission Company assuming that the company were to do the relocation work ". The Attorney-General's opinion advised that: " the damage, to which the utility company is subject by reason of the intended appropriation, is compensable; and that the cost of relocation is a reasonable or convenient formula for determination of the amount of such damage. * * * It is my opinion, therefore, that if, in the exercise of reasonably prudent business judgment, the Superintendent is convinced that the costs of relocation are not in excess of the amount of damages to which the Tennessee Gas Transmission Company would reasonably be entitled to, he may enter into an agreement of adjustment with the company, in which agreement the amount of damages to be received by the company would be limited to reimbursement for the cost of relocating its facilities." (1957 Opns. Atty. Gen. 243.)

On May 8, 1957, the first of the two contracts in issue, relating to the White Plains section of the expressway, was executed. Each of the two contracts consisted of two separate agreements, one entitled " agreement of adjustment ", the second " agreement relating to reimbursement for relocating facilities ". By the terms of the adjustment agreement, the State agreed to pay to claimant the " actual and necessary " cost of relocating its pipeline and to furnish claimant with appropriate substitute easements, both items as compensation for the appropriation of claimant's easements. In the second agreement, claimant undertook to relocate its pipeline at cost. On July 2, 1958, similar agreements for the Elmsford section of the expressway were entered into.

During the course of the relocation, claimant submitted invoices totaling $1,111,723.13 for the White Plains section, and $892,737.52 for the Elmsford section. The State made periodic payments totaling $950,617.56 and $645,259.33, respectively, leaving a balance due on both agreements of $408,583.76.

On October 5, 1962, claimant received a letter from the Department of Public Works informing it that no further payments would be made on either agreement. Thereafter, on April 3, 1963, the claim herein was filed to recover the balance due under

both agreements. The State interposed a counterclaim seeking the return of all prior payments.

The trial court awarded claimant the entire balance due, together with interest, and, as additional relief, directed the State to convey to claimant the promised alternative easements.

First among the multitude of issues raised by the State upon this appeal, and perhaps the most fundamental objection of all, is the challenge to the validity and legality of the agreements sued upon. In essence, the State argues that these agreements constitute illegal gifts of State moneys in contravention of section 8 of article VII of the State Constitution inasmuch as the State is under no obligation to compensate claimant for the cost of relocating its facilities. Cited in support of this contention is the common-law rule that a utility maintaining its facilities in the public streets pursuant to a franchise assumes the risk of their relocation and is bound to relocate those facilities at its own expense when such relocation is required by the public convenience, health or safety (*Matter of Consolidated Edison Co. of New York* v. *Lindsay,* 24 N Y 2d 309; *New York Tel. Co.* v. *City of Binghamton,* 18 N Y 2d 152; *New Rochelle Water Co.* v. *State of New York,* 10 N Y 2d 287; *New York City Tunnel Auth.* v. *Consolidated Edison Co.,* 295 N. Y. 467; *Transit Comm.* v. *Long Is. R.R. Co.,* 253 N. Y. 345).

Several important considerations lead us to conclude that the common law is inapplicable to the facts of this case. First of all, underlying the application of that rule is the concept of *franchise,* a special privilege which authorizes use of the public streets thereby creating a right where none existed before and which commensurately requires that the one to whom the privilege is granted assume the risk of relocation (*Transit Comm.* v. *Long Is. R. R. Co., supra,* p. 351). Claimant's right to construct and maintain its gas transmission line was not, however, premised upon a mere franchise or license, rather it was founded upon a valuable property interest, a permanent easement duly acquired at the cost of over $1,000,000 from two municipal corporations authorized by law to so encumber their property (L. 1948, ch. 852, § 492). Nor can the particular property involved here be characterized as a '' public street '' within the meaning of the common-law rule. At the time the easement was acquired and the pipeline constructed there was neither a public street nor a public highway in the area and we note, in passing, that property acquired and held by the Westchester County Park Commission is deemed generally to be '' park '' and parkland (see L. 1948, ch. 852, §§ 472, 476; *Matter of County of Westchester* [*Hutchinson Riv. Parkway*], 246 N. Y. 314).

More importantly, to treat these agreements as being merely contracts to pay relocation cost is to lose sight of the context in which these agreements were made and the intent of the parties thereto. It is evident that '' reimbursement for relocation costs '' was utilized solely and merely as a convenient and appropriate formula and method of payment intended and designed to compensate claimant for the damages it sustained when its easement was appropriated. Thus, in exchange for the taking of claimant's valuable property interest, for which claimant was entitled to just compensation, claimant was compensated and the precise form which that compensation took was the payment of relocation costs, an amount which at that time was estimated would not exceed the total amount of damages which claimant was otherwise entitled to. This conclusion is supported not only by the Attorney-General's opinion rendered prior to the execution of the agreements but also by the agreements themselves which are replete with references to this arrangement. When so viewed, it is clear that the amounts to be paid claimant by the terms of these agreements, whether termed '' reimbursement for relocation costs '' or more broadly viewed as '' compensation '' were moneys to which claimant was entitled by reason of the taking.

In addition to challenging the validity of the agreements, the State also questions the validity of the payments made by the State pursuant to these agreements. Both agreements contain the following provision: '' The Company will be reimbursed for its alteration and relocation costs and expense on all of the terms, covenants and conditions in the manner and at the times set forth in the ' Relocation Agreement ' and only upon such approval by the Comptroller of the State of New York as is or may be required by law and only upon a certificate of the Attorney General of the State of New York that the Company is legally entitled thereto.'' At the trial it was established that no such certificate had been issued by the Attorney-General. It is the State's position that absent such a certificate each of the payments made to claimant was invalid and consequently should be refunded. The phrase '' legally entitled thereto '' is interpreted by the State as being all-embracing and encompassing not only a certificate of claimant's title to the lands in question but also a determination as to the validity of the agreements and claimant's right to payment thereunder. At the trial two of the witnesses adopted a more limited interpretation. The attorney who drafted the contracts for the Superintendent of Public Works and the counsel to the Superintendent both testified that they understood this particular clause as requiring only a cer-

tificate as to claimant's title. Adoption of the State's position would require this court to ignore this testimony which appears to reflect the reasonable interpretation of the contract language and, more significantly, the fact that prior to the execution of the agreements the Attorney-General's opinion as to the propriety of such an arrangement was requested and rendered. Also not to be overlooked is the fact that substantially all of the payments due under these agreements were made prior to the State's belated attempt to raise the issue.

One of the defenses raised by the State is that had claimant followed the information made available to it in the form of the 1954 plans and the 1955 revisions and located its pipeline accordingly, it would have avoided the necessity for thereafter relocating its pipeline. This position is not, however, borne out by the record. Absent from the record is any testimony that either set of plans was sufficiently complete or received by claimant's engineers in sufficient time to enable claimant to avoid conflict with the expressway as subsequently constructed. Even assuming that certain aspects of the relocation could have been avoided had the preliminary plans been more closely followed, this would not affect the State's obligation under these agreements since at the time they were entered into both parties were aware of the extent and location of the pipeline and the obligation was then assumed to pay for the cost of relocating the pipeline as it existed at that time.

In the event the agreements are upheld, the State contends that the trial court, in determining the amount of damages, allowed several substantial overcharges which should be disallowed. This particular aspect of the trial court's determination was purely a factual one and nothing advanced upon this appeal warrants our interference with that determination.

While we uphold generally the validity of the agreements which form the basis of the claim and the award made by the trial court, there are two particular features of the judgment appealed from which require modification. In addition to awarding monetary damages, the trial court directed the State to furnish claimant with appropriate substitute easements as covenanted in the two agreements, an item of relief not specifically requested in the claimant's demand for relief. The nature and extent of this relief is such that it cannot fairly be considered as mere " incidental equitable relief " (*Psaty* v. *Duryea,* 306 N. Y. 413, 417) to a suit for monetary damages and accordingly the granting of this essentially equitable relief was beyond the jurisdiction of the court.

In awarding interest on the two agreements, the trial court recognized the difficulty of ascertaining precisely the date on which interest on the claim was to commence and accordingly, pursuant to CPLR 5001 (subd. [b]) chose what it considered to be a " reasonable intermediate date ". With respect to the agreement relating to the White Plains section, October 30, 1958 was chosen, the date on which claimant submitted its last major invoice, while December 15, 1959 was selected for the Elmsford agreement, a date approximately midway between the time the last two major invoices were submitted. In selecting these particular dates, the trial court erred as the State is entitled to a reasonable time after submission of the invoices to process them (*Terry Contr.* v. *State of New York,* 23 N Y 2d 167). Rather than remit this matter back to the trial court for a determination as to when such a reasonable time would expire in the case of each invoice, because of the complexities of the matter and the anticipated difficulties that would be encountered in pinpointing such dates, we believe that interest should be awarded on the entire claim from October 5, 1962, the date when the trial court determined claimant was able to ascertain its total damages (*Empire Crafts Corp.* v. *Grace China Co.,* 21 A D 2d 888, affd. 17 N Y 2d 851).

A consideration of the interest issue leads us to the final question remaining for determination, whether the claim was timely filed. The trial court determined that the claim accrued within the meaning of subdivision 4 of section 10 of the Court of Claims Act on October 5, 1962, when the State notified claimant that no further payments would be made. This conclusion is amply supported by the evidence as this is the date when claimant was first able to determine the extent of the total damages. By the terms of the agreements, each bill submitted by claimant was subject not only to an audit by the Bureau of Roads but also to a final determination by the Superintendent. Until the final repudiation by the Department of Public Works on October 5, 1962, claimant could not ascertain the total damages and consequently its claim accrued as of that date (see *Tilden Constr. Corp.* v. *State of New York,* 30 A D 2d 612).

The order should be affirmed and the judgment modified, on the law and the facts, so as to award interest on the claim from October 5, 1962, and to delete the direction that the State furnish the easements under the agreements of May 8, 1957 and July 2, 1958 and, as so modified, affirmed, without costs.

REYNOLDS, J. P., STALEY, JR., COOKE and GREENBLOTT, JJ., concur.

Order affirmed and judgment modified, on the law and the facts, so as to award interest on the claim from October 5, 1962, and to delete the direction that the State furnish the easements under the agreements of May 8, 1957 and July 2, 1958 and, as so modified, affirmed, without costs.