CITY OF NEW YORK, Respondent, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant.

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant, v CITY OF NEW YORK et al., Respondents.

First Department, February 7, 1986

218

## APPEARANCES OF COUNSEL

*Barry P. Schwartz* of counsel *(Fay Leoussis* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for City of New York, respondent.

*Sol Freedman* for Perez Interboro Asphalt, respondent.

*Sheila S. Rosenrauch* of counsel *(Geraldine O'Donnell* with her on the brief; *Ernest J. Williams,* attorney), for appellant.

*Mark Seidenfeld* of counsel *(David E. Blabey,* attorney), for Public Service Commission of the State of New York, *amicus curiae.*

## OPINION OF THE COURT

SANDLER, J. P.

Analysis of the issues presented on this appeal necessarily begins with the firmly established principle that, with certain exceptions not here relevant, a public utility such as Consolidated Edison Company of New York, Inc. (Con Edison) is required at its own expense to remove or protect and replace its underground facilities whenever the public health, safety or convenience require that to be done. The common-law origin of this obligation was recently noted in *Matter of Consolidated Edison Co. v Lindsay* (24 NY2d 309, 316; *see also, New York City Tunnel Auth. v Consolidated Edison Co.,* 295 NY 467; *Transit Commn. v Long Is. R. R. Co.,* 253 NY 345). A consent agreement entered into on October 4, 1972 by which the city granted Con Edison permission (i.e., a fran-

chise) to place its structures and equipment in the city streets provides as here pertinent:

"NINTH: The Edison Company shall allow the City of New York, a contractor for the City, and any public benefit corporation a right of way through, under or above any part of the structures hereby authorized, for any and all structures which are now or may be hereafter placed in said street or public place of the City of New York.

"If at any time it becomes necessary to replace or alter any structure of the City, or to construct any structure or lay any pipe for the City, in a street or public place, the Edison Company shall, at its own expense, protect, alter or relocate all or any portion of the structures and equipment hereby authorized which may be in interference therewith and in case of the refusal or neglect of the Company so to do, the City shall have the right to break through or remove or relocate all or any portion of the structures and equipment hereby authorized and the Company shall pay to the City the expense incurred by such removal or relocation."

Likewise, Administrative Code of the City of New York § 693a-3.0 (b) provides: "Public service corporations shall protect their property. Public service corporations whose pipes, mains or conduits are about to be disturbed by the regulating or grading of any street, shall, on the receipt of the notice provided for in the preceding subdivision, remove or otherwise protect and replace their pipes, mains and conduits, and all fixtures and appliances connected therewith or attached thereto, where necessary, under the direction of the commissioner."

On this appeal, three issues are presented. The first is the appropriate procedure to be followed after Con Edison receives a notice from the city to remove or protect its facilities in place. The second is the validity of the Special Term orders appealed from, insofar as they directed Con Edison to remove or relocate its facilities and denied Con Edison the option of protecting its facilities in place. The third is whether a public utility is entitled to bring an action against the city as a third-party beneficiary based upon certain provisions contained in a contract between the city and a contractor.

In May 1984, the city entered into a contract with Perez Interboro Asphalt Corp. (Perez) for the total reconstruction of Bedford Avenue in Brooklyn. The project, covering a distance of 4 to 5 miles, involves the excavation of the existing road-

bed, installation of new water mains, sewer drainage catch basins and connecting chutes, regrading and repaving the roadbed, installation of traffic and street lights, and the planting of trees. Soon after the commencement of the reconstruction work in September 1984, Perez began encountering substantial interferences from Con Edison's subsurface facilities, primarily from electrical ducts and duct banks. Con Edison, having received timely statutory notice of the commencement of the project in accordance with Administrative Code § 693a-3.0 (a), became obligated to remove or protect the interferences encountered by Perez, as mandated by subdivision (b) of that section as well as paragraph NINTH of the franchise agreement.

Historically, on projects such as these, the utility company and the city's contractor negotiate between themselves in order to reach an agreement as to which facilities must be removed, which may be protected in place, and what alternative methods of construction the contractor may employ to eliminate interferences or minimize removal expenses. Con Edison has the option to use the city's contractor to perform the work necessary to eliminate the interferences encountered, or to hire its own contractor, or to do the work itself. Con Edison does *not* have the option to leave the interferences in place, and thereby delay projects pending efforts to induce contractors to do the work at a price Con Edison deems fair. Nor may Con Edison effectively bring such projects to a halt through nonaction while it attempts through litigation (usually protracted litigation) to require the city's contractor to avoid or eliminate at the contractor's own expense the interferences that Con Edison is clearly required, by its franchise, by statute and the common law, to remove or protect in place. at its own expense. The cost to the city and its citizens of such a cumbersome procedure, in delay, inconvenience and danger, as illustrated by this case, is unacceptable.

Con Edison and Perez were unable to reach an agreement as to the cost of eliminating the interferences. The city thereupon attempted through mediation to bring the parties to an accord, but they remained far apart in their positions, Con Edison contending that Perez could eliminate the interferences for $350,000, and Perez demanding $2 million or more throughout the negotiations. The record does not establish which of these two parties was being unreasonable in its demands, but that is, in any event, irrelevant to our determination of this appeal. In February and March 1985, in order to

minimize further delays in completion of the project, the city sent directives to Con Edison to "eliminate" or remove certain interfering facilities, and to "clear" or protect others. Con Edison refused to comply.

In March 1985 Con Edison commenced an action against the city and Perez, in essence contending that it was a third-party beneficiary of the contract between the city and Perez, and sought, in addition to declaratory relief, an injunction requiring the city to direct Perez to protect and support all underground facilities encountered in its work area, to install "Type III" catch basins (which allegedly would avoid certain interferences), and to vacate the city's directives and a "move order" issued to Con Edison by Transportation Commissioner Ameruso on March 12, 1985. The city moved to dismiss the complaint for failure to state a cause of action, and Con Edison cross-moved for summary judgment, including in support of its motion an affidavit from its construction superintendent in which he asserted that "Con Edison cannot use its own forces to protect or support its facilities because such work is too closely integrated with and inseparable from the work Perez Interboro must perform for the City. Consequently, this court must order Perez Interboro to perform that work".

Shortly after Con Edison commenced its action against the city and Perez, the city brought an action against Con Edison in which it asserted, *inter alia,* (a) that Con Edison's failure to comply with the city's move order and prior directives had caused extensive delays on the Bedford Avenue project as well as on two other roadway reconstruction projects being coordinated with it and (b) that, as a result, sewer excavations at more than 30 locations had to be backfilled for safety reasons, which had led to flooding during every rainfall and the obstruction of pedestrian and vehicular traffic. In addition to seeking a declaratory judgment that Con Edison was violating its common-law, statutory and franchise duties to remove or protect the interferences, the city requested mandatory injunctive relief requiring Con Edison to carry out those obligations. The city also moved by order to show cause for a preliminary mandatory injunction directing Con Edison to remove or protect its facilities. Con Edison then moved to dismiss the city's action and argued for a denial of the city's motion for a preliminary injunction, asserting, *inter alia,* that Perez was a necessary party defendant to the city's action because only Perez was "in a position to protect or support Con Edison's

facilities; such work is integrated with the City work and, in point of fact, inseparable from it."

In view of Con Edison's clear obligation either to remove or protect its facilities, and its statements that it was unable to use its own personnel to protect the facilities or to reach an agreement with Perez to protect them, Special Term, not surprisingly, granted the city's motion for an injunction by directing that Con Edison remove or relocate its facilities. Con Edison moved to renew and reargue, now urging that the facilities could be safely supported and protected in place, and sought, insofar as here relevant, a modification of Special Term's July 24, 1985 order to permit Con Edison the option to support and protect its facilities. The city conceded that if Con Edison were able to arrange for the protection of its facilities where feasible, that would be satisfactory to the city, but in view of Con Edison's prior claims that it was unable to make such arrangements the city argued that the order directing removal of the facilities was appropriately entered. On September 9, 1985, Special Term (Shorter, J.), granted renewal and reargument but adhered to Judge Myers' decision.

In light of the circumstances described above, in particular Con Edison's original emphatic claim that it could not protect its facilities, affirmance of both orders would be fully warranted. However, to do so would bring about a costly, mischievous, and probably unnecessary result in that it would take an expenditure by Con Edison of approximately $8 million over a period of two years and quite possibly major disruptions in electrical service if Con Edison is required to remove and relocate all its interfering underground facilities along the entire five-mile length of Bedford Avenue. It seems reasonably clear that Con Edison's original claim that it "cannot use its own forces to protect or support its facilities" was to some extent misleading, and was advanced in an effort to persuade Special Term to order the city to direct Perez to protect and support Con Edison's facilities insofar as they interfered with the reconstruction project. What Con Edison really meant to convey, as explained on this appeal, is that it would be impractical and uneconomical to have its own personnel standing by the reconstruction site waiting to jump in and perform protection and support work in the midst of the other work being performed by Perez. Nevertheless, Con Edison now seeks to maintain that option, as well as the option of perhaps paying the contractor more than it believes it should pay for protection work, if the only alternative is the wholesale re-

moval and relocation of miles of subsurface electrical facilities.

The New York State Public Service Commission has submitted a brief *amicus curiae* urging that we modify the orders appealed from to permit Con Edison the option to protect its facilities in place in order to avoid interruption of electrical services to Con Edison's customers and an $8 million removal and relocation expense which may ultimately be passed on to those consumers. Taking all of these factors into consideration, and without signifying our approval of Con Edison's actions in this matter, or any criticism of Special Term's quite understandable determinations, we believe that the September 9, 1985 order granting reargument and renewal should be modified to grant Con Edison the option to protect its facilities where feasible and where permitted by the city.

Unfortunately, it is impossible to determine which removal orders issued to Con Edison by the city are based upon considerations of convenience and safety, and which were issued as a result of Con Edison's intransigence. Accordingly, we direct the city, within 30 days of entry of our order in this case, to reexamine the sites of Con Edison's interfering facilities, and to issue new orders to protect the facilities where that is feasible, or to remove and relocate them where required by considerations of safety or substantial disruption of the existing reconstruction plans. Con Edison shall thereupon promptly arrange for protection or removal of the interferences in accordance with the city's directives.

We emphasize that in any instance where the city has directed removal of an interference, it must be removed even if Con Edison believes its equipment can be protected in place. Con Edison's sole remedy in that contingency is an action against the city for damages caused by any directives to remove and relocate its facilities upon proof that such directives were issued arbitrarily. *(See, New York Tel. Co. v City of New York,* 95 AD2d 282, *affd on opn below* 65 NY2d 681.)

Finally, we agree with Special Term's implicit determination that Con Edison was at most an "incidental" as opposed to an "intended" beneficiary of the contract between the city and Perez. *(See, Fourth Ocean Putnam Corp. v Interstate Wrecking Co.,* 66 NY2d 38.) In support of its contention that it is a third-party beneficiary, Con Edison points to the following provisions incorporated into the city's contract with Perez: "Underground Facilities. Care and caution shall be exercised

by the Contractor while performing the work to insure that continuing service to all underground facilities will be maintained." Industrial Code (12 NYCRR) § 3.15 (a) incorporated by reference in section 34 of the contract similarly requires that an excavator such as Perez "shall provide prompt and adequate support for every underground facility located in his work area as he deems necessary due to his excavation work". However, an explanatory note to this section provides: "This section does not affect the right of any governmental unit or agency to require the operator of a private underground facility to move or relocate such facility when it interferes with the construction or installation of a public facility." *(See also, to similar effect,* 12 NYCRR 53-1.4 [d].)

Section 35 of the contract provides: "Con Edison, Transit Authority, Brooklyn Union Gas & New York Telephone facilities are located within the project limits. As a result of this project, these private utilities will be required to make adjustments to some of their facilities. This work will be performed by them or their agents at their expense. Contractor to coordinate activities with them. All precuation *[sic]* shall be taken to avoid major interferences with public or private underground facilities."

Clearly, none of these contractual provisions confer upon Con Edison the status of third-party beneficiary. We accordingly hold that Special Term ruled properly in dismissing Con Edison's complaint against the city insofar as the complaint sought a mandatory injunction against the city and a declaration that the city was obligated to direct Perez to protect and support Con Edison's underground facilities based on Con Edison's alleged status as a third-party beneficiary of that contract. *(See, Fourth Ocean Putnam Corp. v Interstate Wrecking Co.,* 66 NY2d 38, 44-45, *supra; Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652, 656; *Paterno & Sons v Jamaica Water Supply Co.,* 52 AD2d 595; *cf. New York Tel. Co. v Secord Bros.,* 62 Misc 2d 866, *affd* 35 AD2d 779.)

Accordingly, the order of the Supreme Court, New York County (Allen M. Myers, J.), entered July 24, 1985, which, *inter alia,* granted the city's motion for a preliminary mandatory injunction directing Con Edison to remove or relocate certain underground facilities along Bedford Avenue in Brooklyn, and dismissed Con Edison's action for a declaratory judgment and injunctive relief against the city, should be modified, on the law, without costs, to declare that Con Edison is not a third-party beneficiary to the Bedford Avenue recon-

struction contract entered into between the city and Perez Interboro Asphalt Corp., and that Con Edison is relegated to a plenary action against the city if Con Edison can establish, after performing without delay the work directed by the city, that such work orders were issued arbitrarily, and, as so modified, affirmed.

The order of the Supreme Court, New York County (Kenneth Shorter, J.), dated September 9, 1985, which granted Con Edison's motion for renewal and reargument but adhered to the determination of Justice Myers in the July 24, 1985 order, should be modified, on the law, and the facts, and in the exercise of discretion, without costs, to permit Con Edison the additional option to protect its facilities in place, without delay, except where the city has specifically ordered the removal of such facilities, in which case Con Edison shall promptly remove them, and, as so modified, affirmed.

FEIN, MILONAS and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on July 24, 1985, unanimously modified, on the law, without costs and without disbursements, to declare that Con Edison is not a third-party beneficiary to the Bedford Avenue reconstruction contract entered into between the city and Perez Interboro Asphalt Corp. and that Con Edison is relegated to a plenary action against the city if Con Edison can establish, after performing without delay the work directed by the city, that such work orders were issued arbitrarily, and, as so modified, affirmed, and the order of said court, entered on September 9, 1985, is unanimously modified, on the law and the facts, and in the exercise of discretion, without costs and without disbursements, to permit Con Edison the additional option to protect its facilities in place, without delay, except where the city has specifically ordered the removal of such facilities, in which case Con Edison shall promptly remove them, and, as so modified, affirmed.