[713 NYS2d 40]

CITY OF NEW YORK, by and on Behalf of the DEPARTMENT OF DESIGN AND CONSTRUCTION OF THE CITY OF NEW YORK, Appellant, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent.

First Department, September 14, 2000

APPEARANCES OF COUNSEL

*Alan G. Krams* of counsel (*Kristin M. Helmers* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellant.

*Andrew J. Czerepak* of counsel, New York City (*Richard W. Babinecz*, attorney), for respondent.

*Steven I. Tolman* of counsel (*Alan Levy* on the brief; *Levy & Tolman*, attorneys), for Interstate Industrial Corp., *amicus curiae*.

## OPINION OF THE COURT

ROSENBERGER, J. P.

This case presents an issue of first impression: whether Administrative Code of the City of New York § 24-521 (b), which requires public utilities to bear the costs of protecting utility installations affected by public construction projects, overrides the common-law rule that the City must bear such "interference costs" when the utility installations are maintained pursuant to permanent easements purchased by the utility company from a private landowner, rather than pursuant to a franchise from the City. We must also decide whether,

under the facts of this case, the enforcement of certain "Order Out Notices" and the imposition of interference costs on defendant utility company would constitute an unconstitutional taking, even though defendant allegedly purchased the easements with notice that the private roads in question were soon to be dedicated to the City as public streets.

Defendant Con Edison maintains underground electric and gas facilities and structures within public streets in New York City. Most of the facilities are placed and maintained pursuant to a franchise granted by the City. Others, including those at issue here, were installed and maintained pursuant to easement grants from private owners who held title to the lands before they became City streets. In the latter situation, the City's title would be subject to Con Edison's pre-existing easement, unless the City exercised its eminent domain power to extinguish the easement and compensated the utility (Administrative Code of City of NY § 19-143).

In 1951, 1967 and 1968, Con Edison acquired three permanent easements from private property owners in Queens and Brooklyn for the installation of electric distribution facilities. Each easement grant recited that the area in question "lies entirely within the bed of a mapped street." At some point thereafter, the areas subject to Con Edison's easements became City streets.

In 1999, the City commenced construction projects (primarily sewer and roadway reconstruction) in the areas where Con Edison's three easements were located. Con Edison took the position that since it held permanent easements which granted it the right, not merely the privilege, to maintain its facilities, it had no responsibility for interference costs. The City sought a judgment directing Con Edison to protect or relocate its utility installations, at its own expense, at the sites of the three City construction projects. Con Edison cross-moved for summary judgment on the ground that the City's interference with its easements amounted to a taking without just compensation. The IAS Court granted the cross motion and dismissed the complaint.

Under common law, public utility companies have an obligation to pay all costs associated with protecting their facilities during street repair projects (see, Matter of Diamond Asphalt Corp. v Sander, 92 NY2d 244, 249). Underlying the common-law rule "is the concept of *franchise*, a special privilege which authorizes use of the public streets thereby creating a right where none existed before and which commensurately requires

that the one to whom the privilege is granted assume the risk of relocation" (*Tennessee Gas Transmission Co. v State of New York*, 32 AD2d 71, 75 [emphasis in original], *affd* 27 NY2d 608).

By contrast, where the utility's right to construct and maintain its facilities is founded upon an easement, a valuable property interest, the common-law rule is that the utility is not responsible for the costs of relocating its facilities (*supra*). In *Panhandle E. Pipe Line Co. v State Highway Commn.* (294 US 613), the United States Supreme Court held that a pipeline company could not be required, without compensation, to relocate or alter its transmission lines to make room for a highway across the company's private right of way. Since the transmission lines were located on a permanent easement which the pipeline company had purchased for a substantial sum, the State's uncompensated interference with the company's property rights would be an unconstitutional taking (*supra*, at 618). *New York Tel. Co. v State of New York* (67 AD2d 745), a Third Department case, also recognized that the difference between a franchise and an easement can determine whether the utility or the government bears responsibility for interference costs.

■ However, the instant case presents an issue that was not raised in the cases on which Con Edison relies. Section 24-521 (b) of the Administrative Code of the City of New York does not distinguish between facilities maintained pursuant to a franchise and those based on an easement. The section provides: "Public service corporations whose pipes, mains or conduits are about to be disturbed by the constructing, altering or repairing of any sewer, culvert, water main or pipe, shall, on the receipt of the notice provided in the preceding subdivision, remove or otherwise protect and replace their pipes, mains and conduits, and all fixtures and appliances connected therewith or attached thereto, where necessary." The City contends that this ordinance superseded the common-law rule distinguishing between facilities installed pursuant to City franchises and those installed pursuant to easements. Con Edison argues that section 24-521 (b) is a codification of the common-law rule and is therefore limited to facilities placed by virtue of a franchise.

However, the plain language of the ordinance does not contain any exception for utility installations that occupy land by virtue of an easement. When the Legislature has wanted to shift utility relocation costs from utilities to the government, "it has done so in language which is clear and to the point"

(*Matter of Consolidated Edison Co. v Lindsay*, 24 NY2d 309, 319).

■ Section 24-521 (b) does not work an unconstitutional taking by eliminating the common-law exception for easement installations. The *Panhandle* case (294 US 613, *supra*), on which Con Edison primarily relies, reflects an earlier Supreme Court jurisprudence that had a narrower conception of the legitimate uses of State police power. Although acknowledging that a State need not compensate a property owner for the effects of reasonable regulations designed to protect the public health and safety, the *Panhandle* Court believed that the State's plan to construct a highway across the gas company's right of way did not further any health and safety objectives (*Panhandle E. Pipe Line Co. v State Highway Commn.*, *supra*, at 622). By contrast, the view adopted by the New York Court of Appeals defines public purposes more broadly (*see, e.g., Matter of Consolidated Edison Co. v Lindsay*, *supra*, at 318-319 [slum clearance]).

Moreover, even under *Panhandle*'s restrictive definition, the road repair and sewer construction projects at issue here advance the public health and safety in a direct and obvious way (*see, Larsen Baking Co. v City of New York*, 30 AD2d 400, 404, *affd* 24 NY2d 1036 [legislation relating to establishment and maintenance of sewers falls within police power]). By imposing the protection and relocation obligation on the utilities, who are best equipped to find cost-effective and safe ways to shield their installations, section 24-521 (b) protects the public's interest in uninterrupted utility service and efficient completion of essential public works projects.

Not every regulatory intrusion on property rights amounts to a taking (*Keystone Bituminous Coal Assn. v DeBenedictis*, 480 US 470). *Keystone* upheld a statute requiring coal mine owners to leave a small percentage of their coal in the ground in order to prevent surface subsidence. Though this regulation had some negative economic impact on the mine owners, it was not a taking because it did not deprive the owners of all economic use of their property (*compare, Lucas v South Carolina Coastal Council*, 505 US 1003), nor was it a permanent physical occupation of their property (*compare, Loretto v Teleprompter Manhattan CATV Corp.*, 458 US 419). *Keystone* stands for the principle that where the property owner's chosen use of the land could endanger the public, the property owner, rather than the public, should bear the cost of averting that crisis.

This principle is equally applicable to the case at bar. While Con Edison may have a property right in the land where its

installations are situated, its use of that land is subject to regulation when necessitated by public safety. "Under our system of government, one of the State's primary ways of preserving the public weal is restricting the uses individuals can make of their property. * * * Long ago it was recognized that 'all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,' * * * and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it." (*Keystone Bituminous Coal Assn. v DeBenedictis, supra*, at 491-492 [citations omitted].)

The City does not seek a permanent ouster of Con Edison from its right of way, but only a temporary interference with that right, so as to facilitate necessary repairs to the City's infrastructure (*see, Soon Duck Kim v City of New York*, 90 NY2d 1). Since there is no permanent occupation of land, there is no per se taking. Nor has Con Edison produced sufficient evidence regarding the adverse economic impact of the ordinance to establish a prima facie regulatory takings claim (*see, Prune-Yard Shopping Ctr. v Robins*, 447 US 74, 83-84).

█ As for Con Edison's other objections to the Order Out Notices, namely that the City's chosen contractors charge excessive prices for utility interference work and that certain interference work demanded by the City is not necessary, these issues may be addressed in further proceedings after Con Edison has complied with the Order Out Notices.* "Con Edison does *not* have the option to leave the interferences in place, and thereby delay projects pending efforts to induce contractors to do the work at a price Con Edison deems fair" (*City of New York v Consolidated Edison Co.*, 114 AD2d 217, 220 [emphasis in original]).

Accordingly, the order of the Supreme Court, New York County (Edward Lehner, J.), entered March 24, 2000, denying the City's motion for summary judgment and granting Con Edison's cross motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, the cross motion denied, the complaint reinstated, the City's motion for summary judgment granted, Con Edison directed to comply with the two pending Order Out Notices and to pay the

---

* The City acknowledges that Con Edison has allowed interference work to proceed at the seepage basin project site located in 119th Street in Queens, which renders the June 1999 Order Out Notice moot. Therefore, our determination only directs Con Edison to comply with the other two notices.

cost of interference work at the three sites at issue, and the matter remanded for further proceedings.

NARDELLI, MAZZARELLI, WALLACH and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered March 24, 2000, reversed, on the law, without costs, defendant's cross motion for summary judgment dismissing the complaint denied, plaintiff's motion for summary judgment granted, the complaint reinstated, defendant directed to comply with the two pending Order Out Notices and to pay the cost of interference work at the three sites at issue, and the matter remanded for further proceedings.