(March 4, 2004)

■ CITY OF NEW YORK, Respondent, v VERIZON NEW YORK, INC., et al., Appellants. [773 NYS2d 31]—

Order, Supreme Court, New York County (Michael Stallman, J.), entered January 10, 2003, which, in an action by the City against public service corporations to recover penalties under Administrative Code of the City of New York § 19-150, insofar as appealed from, denied defendants' motion to dismiss the complaint for failure to state a cause of action, affirmed, without costs.

This is an action by the City to recover penalties against defendant public service corporations pursuant to Administrative Code of the City of New York §§ 24-521 and 19-150. At issue here, inter alia, is defendants' contention that section 24-521 does not apply to their above ground facilities, but only to those laid "in the street." We find that this contention is not supported by the ordinance " 'in language which is clear and to the point' " (City of New York v Consolidated Edison Co., 274 AD2d 189, 192-193 [2000] [citation omitted], appeal and lv dismissed 96 NY2d 727 [2001]), and is inconsistent with a clear legislative intent that utilities protect their facilities during street repair projects (see Matter of Diamond Asphalt Corp. v Sander, 92 NY2d 244, 249 [1998]).

Under Administrative Code § 24-521 (a), "[w]henever any sewer, culvert, water main or pipe is to be constructed, altered or repaired in any street in which the pipes, mains or conduits of public service corporations are laid," the contractor shall give written notice thereof to such public service corporations before breaking ground. Under Administrative Code § 24-521 (b), such notice requires any such public service corporation to protect or replace the "pipes, mains or conduits [that] are about to be

disturbed" including "all fixtures and appliances connected therewith or attached thereto, where necessary." As the motion court ruled, the wires defendants use presumably to transmit telephone communications and other data are thus encompassed by the ordinary meaning of the word "conduit," which is defined not only as a "channel through which something (as a fluid) is conveyed," but also "a pipe, tube, or tile for protecting electric wires or cables" and "a means of transmitting or distributing" (Merriam-Webster's Collegiate Dictionary [10th ed]). Furthermore, defendants' telephone poles clearly fit the statutory definition of "fixtures and appliances connected therewith or attached thereto [the wires]," which the ordinance also charges defendants with removing, protecting or replacing. Hence, if the thrust of the statutory policy is the protection of a public service corporation's facilities during an excavation project and the statutory language covers not only the utility's various "conduits," but "all fixtures and appliances connected therewith or attached thereto," which take myriad forms and may be above or below ground, then it is also clear that the statutory protection should not be limited merely to underground facilities in the absence of express statutory language to that effect. Tellingly, defendants articulate no cogent policy basis for distinguishing between above ground and underground facilities. Nor is defendants' argument persuasive that the word "conduits" immediately follows the words "pipes" and "mains," and that all three of these things are described as "laid" in the street. The rule of ejusdem generis "will not be applied where it contradicts the evident intent of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 239 [b]).

Finally, dismissal of this complaint would have been inappropriate as a remedy for the alleged unnecessary expense defendants incurred in engaging the City's contractor to perform defendants' duties under the ordinance (see City of New York v Consolidated Edison Co., 114 AD2d 217, 223 [1986]). Concur—Buckley, P.J., Saxe, Williams and Gonzalez, JJ.

Andrias, J., dissents in a memorandum as follows: I would reverse and grant defendants' motion to dismiss the complaint for failure to state a cause of action, with leave to replead a common-law cause of action for such relief.

The City seeks to recover penalties pursuant to Administrative Code of the City of New York § 19-150 for 103 days of delay in the amount of $5,000 per day for each day of defendants' alleged continuing violation of Administrative Code § 24-521 by failing to comply with a February 5, 2001 notice, or "order out,"

to remove, shift or alter their poles and appurtenant facilities which interfered with the construction of water mains, storm and sanitary sewers in connection with a project referred to as "Sewers in 219th Street, Etc., Queens."

Under Administrative Code § 24-521 (a), "[w]henever any sewer, culvert, water main or pipe is to be constructed, altered or repaired in any street in which the pipes, mains or conduits of public service corporations are laid," the contractor shall give written notice thereof to such public service corporation before breaking ground. Upon receipt of such notice, subdivision (b) requires such public service corporation to "remove or otherwise protect and replace their pipes, mains and conduits, and all fixtures and appliances connected therewith or attached thereto" that are about to be disturbed. Obviously, the "pipes, mains and conduits" referred to in subdivision (b) refer to "the pipes, mains or conduits" designated in subdivision (a), viz., those "laid" "*in* any street" (emphasis supplied).

Nevertheless, in rejecting defendants' argument that these provisions apply only to underground, not overhead, facilities, the motion court found, and the majority agrees, that defendants' facilities, which consist of poles and wires that presumably transmit telephone communications and other data, are thus encompassed by the ordinary meaning of the words used in the statute, specifically the word "conduit." The motion court further found that defendants' interpretation is contrary to the statute's plain language and its manifest purpose; that there is no logical basis upon which to conclude that a distinction should be made between underground and overhead facilities; and that the statute does not distinguish between underground and above ground facilities and thus is consistent with the City's goals and purposes, as well as the privilege granted to utility companies to use public property.

"It is undisputed that private utility companies serving the City and its residents have a practical and historic statutory and common-law obligation to pay all costs associated with protecting their facilities during street repair projects; these obligations include the removal, protection and relocation of their utility equipment" (*Matter of Diamond Asphalt Corp. v Sander*, 92 NY2d 244, 249 [1998] [citations omitted]). Nevertheless, I cannot agree with the motion court's interpretation of the clear language of section 24-521, which is limited to pipes, mains or conduits "laid" "in any street" and requires no interpretation from external sources.

While the rule of ejusdem generis, which requires a court to limit general language of a statute by specific phrases which

precede the general language, "will not be applied where it contradicts the evident intent of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 239 [b]), there is nothing in section 24-521 (b) to lead to a conclusion that the Legislature intended to require that public service corporations protect or replace their above ground poles and wires as well as the "pipes, mains or conduits" "laid" "in any street" specified in subdivision (a).

The issue is not whether defendants are required to comply with the "order out." They clearly must, whether pursuant to the common law or a specific statute or ordinance (*see Matter of Diamond Asphalt Corp. v Sander, supra*; *City of New York v Consolidated Edison Co.*, 274 AD2d 189, 192-193 [2000], *appeal and lv dismissed* 96 NY2d 727 [2001]). Rather the City seeks to collect a penalty for violation of a specific ordinance, which, by its plain language, does not apply in this instance. If the drafters of section 24-521 had intended it to include poles and overhead wires, they could easily have done so with language such as "in or above any street."

Our dismissal with leave to replead would permit the City to seek recovery under the common law and prove its actual damages rather than relying upon section 19-150, which provides not for an automatic $5,000 penalty, but for a maximum civil penalty of up to $5,000 for each violation.